## HOPPER v. HOPPER.

1. In dower *tout temps prist* may be pleaded in New Jersey by the heir or devisee of husband when he died seised.

2. In pleading this plea the tenant need not aver that he is heir or devisee.

3. The rule settled under the statutes of Magna Charta and Merton as to this plea is not altered by the Statute of New Jersey concerning dower.

4. Any irregularity in making defence in a plea is waived by pleading over.

Demurrer. Argued before the CHIEF JUSTICE and Justices NEVIUS and CARPENTER.

This was an action by Maria Hopper, widow of John J. Hopper, to recover dower of lands in the county of Bergen. The demandant's count was in the usual form. The defendant, as to part of the lands in which dower was demanded (after full defence) pleaded *tout temps prist;* and as to residue, he pleaded *non-tenure;* the plea concluding to the action. The demandant confessed the truth of the second plea, but as to the other replied that John J. Hopper, formerly her husband, died seised in fee of the lands described in that plea; that after his death, the defendant became seised of the said lands as devisee under the last will and testament of the said John J. Hopper; that dower had been demanded on a day alleged in the plea, and traversed that the defendant was seised of the said land, or of any part thereof, as heir, &c.

The defendant in his rejoinder, without joining in the traverse, again pleaded *tout temps prist.*

Demurrer by the demandant and joinder.

*Zabriskie,* and *Vroom,* for demandant.

We are entitled to go back to the first error, and this demurrer draws in question the validity as well of the plea as of the rejoinder.

1. *Tout temps prist* is pleaded erroneously after the defence in bar, not of the damages merely, but of the action. Bad in substance, and not in form merely. See form of pleas, *Spiller* v. *Andrews, Lil. Entries* 189.

2. It does not appear from the plea that the defendant is heir, and if pleadable, it is personal and peculiar to the heir; alienee of heir cannot plead it.

3. The plea and rejoinder are bad, because under the statute of New Jersey the heir cannot plead *tout temps prist.* It is assumed to be an open question in this state, notwithstanding the case of *Woodruff* v. *Brown,* 2 *Har. R.* 246; this point, upon which the court was divided, not being necessary to the decision of the cause. There are four cases under our statute (*Rev. Stat.* 72 § 3,) in which the widow shall be entitled to recover damages. If the widow be deforced of her dower; or cannot have it without suit; or if it be unfairly assigned; or not assigned within forty days after the death of her husband, then she may sue for and recover the same, with damages, &c. Our statute is in the alternative, deforced *or* cannot have it without suit; the statute of *Merton* is deforced, *and* cannot, &c. 1 *Statutes at large, p.* 16. The difference in phraseology demands a different construction. In England it is settled upon doubtful reasoning and authorities; if this plea be pleaded by the heir, that demand must be shewn in order to recover damages; but if recovered, they are from the death of the husband, and not from the time of demand made. The reason given is because the heir holdeth by title, and doth no wrong till demand made; but that the alienee of the heir cannot plead it because he hath not the land all the time since the death of the ancestor. *Co. Lit.* 32, *b.* 33 *a; Doc. & Stud. dial.* 2, *c.* 13; 2 *Crabb. Real Prop.* 184, § 1202; *Park on Dower,* 297, 302, 305, &c.; *Dobson* v. *Dobson, Cas. temp. Hardo.* 17.

In England, by the statute of *Magna Charta,* (9 *Hen.* 3, *c.* 7,) dower was to be assigned within the forty days, the widow's quarantine, but damages were made recoverable only by the statute of *Merton,* (20 *Hen.* 3, *c.* 1,) if the widow was deforced *and* could not have it without suit. The language of this statute only extends to cases where the husband died seised. The favor shewn to the heir was doubtless the ground of the construction under which this plea was given; but it is only to be supported under the statute upon the demand to be implied from the phrase "*and* cannot have it without suit." Our statute

gives damages when the husband did not die seised, from the time of demand made, and also in two other cases not expressly included within the statute of *Merton*—when unfairly assigned, and when not assigned within forty days, and dispensing with the necessity of proving a wrongful withholding or denial, by evidence of demand and refusal.

4. But if it be held that *tout temps prist* is a good plea by the heir, still the rejoinder is bad. This plea is personal to the heir. *Co. Lit.* 32 *b.* ; *Cas. temp. Hardw.* 18.

Mr. *Halsted,* contra.

1. The objection to the plea is only to its *form*, that can only be taken advantage of by special demurrer.

2. The form of this plea is right by the precedents. 1 *Chitty on Pleading*, 398 ; *Rastell's Entries*, 237, 284.

3. The plea of *tout temps prist* is held good by the English authorities under their statutes. 2 *Com. Dig. Tit. Pleader*, Y. 4 ; *Co. Litt.* 32 C. ; *Parke on Dower*, 297 ; 8 *Mod. Rep.* 25 ; 2 *Sellon Pract.* 210 ; 2 *Bac. Abr. Dower M. p.* 241.

4. In New Jersey the correctness of this plea is not an open question. It was settled in *Woodruff* v. *Brown.* The view of Justice Dayton, that the N. J. Statute is only a re-enactment of the English Statutes combined, is the correct one. In *Rankin* v. *Oliphant*, 9 *Miss. R.* 239, this view is taken on a statute similar to our own. Also in 1 *Conn. R.* 180.

5. As to the verbal construction of the statute. The court will control the language of the statute to effectuate justice. *Bac. Abr. Tit. Stat. Letter J.* 4 ; *Bonham's Case*, 8 *Rep. L.* 34 ; to effect justice, court will disregard a statute. " And " will be construed " or " to effect intent of parties. *Doctor & Student, p.* 140, 141 ; 2 *Saund. R.* 45 ; 1 *Yates* 152.

CARPENTER, J. The first objection taken to the plea is an objection in point of form, which, if available on special demurrer, has been waived by pleading over. Much importance was formerly attached to the different modes of making *defence*, and any deviation from the proper form gave occasion to critical and subtile exceptions, now discountenanced by the courts. *Tout*

*temps prist* is a plea which goes only to the damages and not to the action, and has been irregularly pleaded in the present instance, but the error is an error in form merely. Want of defence, when required—and upon the same reason an irregular mode of defence—is aided upon general demurrer. *Gould*, 31; 1 *Ld. Raym.* 282; 3 *Salk.* 271.

Another objection, that the defendant should have averred himself heir, is not supported by the precedents. In this respect this plea conforms to that in the case of *Spiller* v. *Adams*, 1 *Lil. Ent.* 189; and to other approved precedents in the books.

But the chief point on the argument was, whether the husband dying seised *tout temps prist* is a good plea by the heir or devisee in this state, under our statute. It was held by a majority of the Court in *Woodruff* v. *Brown* that it was a good plea by the heir, and, unless in case of obvious error or inadvertence, it is not expedient to unsettle what has been once decided. The Court, however, having been divided as to the validity of this plea under our statute, and the point, although largely and ably discussed, not absolutely necessary to the decision of that cause, it may perhaps seem necessary to examine the reasons given for the prevailing opinion. I shall not undertake to recapitulate the learning to be found in the arguments and opinions in that case, and which has been so thoroughly reviewed on the present argument, any further than may be necessary to present the grounds of my own judgment. After a careful consideration of what is to be found in the report of that case, and of what has been said on the present, I have come to the conclusion that this plea may be pleaded by the heir. It seems to me that the learned judge who drafted our statute did not intend, by that part of the third section to which this discussion refers, to change the rules settled under the statutes of *Magna Charta* and of *Merton*, in relation to the remedy of the widow. The peculiar phraseology of our statute seems to have been the consequence of some alteration of other parts of the statute, and for the purpose of preserving those rules in relation to the remedy to which we refer. See opinion of *Dayton J.* 2 *Har. R.* 263, 264. Well known rules in the construction of statutes ought not to be lightly departed from. Statutes in affirmance of the common law, or in

affirmance of judicial construction upon a former statute, ought not to be holden a deviation from the former law, unless it be obviously so. It has been said to have been well settled in New York in respect to their revisions that the "mere change of phraseology" was not to be construed a change of the law, unless such phraseology evidently purported an intention to work a change. *Cowen J. Douglass* v. *Howland*, 24 *Wend.* 45, 47; *Taylor* v. *Delancy*, 2 *Caines Cas.* 150, 151. Cited with commendation by Chancellor Kent, 1 *Com.* 468 *note*.

Our statute enacts that "If the widow be deforced of her dower or cannot have it without suit, or if her dower be unfairly assigned, or be not assigned within forty days after the death of her husband, then she may sue for and recover the same with damages, that is to say, the value of the whole dower, to her belonging from the time of her husband's death, if he died seised, or shall die seised, or from the time of demanding dower, if the husband was or shall be seised, but did not, or shall not die so seised, unto the day that she shall recover seisin of her dower, by the judgment of the court." *Rev. Laws.* 397; *Rev. Stat.* 72, § 3. By Magna Charta, dower was to be assigned to the widow within forty days after the death of her husband, but dower being a real action no damages were recoverable either by the common law or under this statute. A subsequent enactment partially remedied this grievance. If deforced, (which signifies the witholding her dower, and may be by unfairly assigning, or by not assigning at all for the space of forty days) and the widow was hence put to her action, the statute of *Merton* then gave her damages from the death of her husband, in case he died seised. It will be seen that this comprises the corresponding part of our statute, no more and no less. There are no two distinct cases in which the English statute gives damages: it merely prescribes that the widow who is deforced, and therefore obliged to resort to her action, shall recover damages. A deforcement of a widow's dower is simply the witholding the dower by the heir or alienee. 3 *B. C.* 172, 173. The question of damages can only arise in case of suit brought, and the statute of *Merton* in effect, then simply enacts, that if the widow, being deforced, should recover by plea, they that should be

convicted of such wrongful deforcement, should yield damages
&c. The heir had forty days, the widows quarantine, within
which to assign dower, and was not liable to an action, until the
expiration of that 'period. In this state, in place of the mere
right to occupy the mansion house and plantation for forty days,
our statute authorizes the widow to remain and to hold them
without rent until her dower shall be assigned her. This alte-
ration of the law rendered some provision necessary to define
the period, within which the heir should be required to assign
dower, and after the expiration of which he should be liable to
an action. The provision in regard to the forty days, adopted
from the rule of the English law, under the statute of Magna
Charta, was therefore, incorporated in the third section of our
act. The substance of the third section, where the husband
died seised, then is, that if dower be not assigned, within forty
days, or be assigned unfairly, which in either case, constitutes
a deforcement, the widow has her right of action, and shall
recover damages according to the rule prescribed by the statute.
It is only in case of action brought that the statute can ever ap-
ply, and hence no argument can legitimately be based upon the
mere change of the word; *and* in the English statute, to the
word *or* in our own act.

The learned *Doctor* in the venerable treatise of St. Germain,.
did not question the opinion of the *student*, that under the stat-
ute of *Merton*, damages were not recoverable at *law* when the
husband did not die seised. But the Doctor insisted that in con-
science the widow was entitled to damages from the time of
demand made on the alienee and refusal on his part to assign
dower, seeing that immediately after the death of her husband
she ought to have her dower. *Doct. & Stud. Dial.* 2, *a* 13. Our
statute supplies this defect, and gives damages from the time of
demanding dower; in which respect only, according to my
judgment, does the third section depart from the construction
and practice under the English Statute : The English author-
ties may therefore be referred to for the proper practice under
our act in respect to that part of the section common to both.
Under the English Statute, if the heir had never refused to as-
sign dower, and pleaded that he had always been ready, and

was then ready, the courts, by no unreasonable construction then held, that in such case there was no wrongful deforcement, and gave damages only from the issuing of the writ. It was said that the heir held by title, and did no wrong till a demand made, when his neglect or refusal to assign dower, made his holding tortious toward the widow. The rule is too well settled in the English law, and the validity of this plea too well established, to be disturbed at the present day by any criticism upon the reason for its adoption. I believe it to be equitable in its operation, and feel no disposition to disturb the rule. It cannot lead to the inconvenience apprehended by one of the judges who dissented in *Woodhull* v. *Brown*. It would not be necessary to await the return of some unknown son or grandson, travelling in Europe or elsewhere, to whom the estate may have descended. The demand need not be personal, but may be made on the land. This is not only clear upon general principles, but plainly appears from the chapter in the *Doctor & Student* already referred to, the author of which, Lord *Coke* assures us, was a discreet man, and well read both in the common law and in the civil and canon laws also. *Student*—" Though she ought to be endowed immediately after the death of her husband, yet she can lay no default in the feoffee till she demand her dower upon the ground, and that the tenant be not there to assign it, or if he be there, that he will not assign it."

I have not been able to find any case directly in point as to the right of the devisee to plead this plea, but the question may be resolved by the rules already discussed, applied by way of analogy. The alienee of the heir cannot plead *tout temps prist* and the reason given is because he had not the land all the time since the death of the ancestor. The alienation is said to be equivalent to refusing dower by making it impossible for the heir, upon whom the law has imposed the duty, to assign dower. The alienee of the heir enters upon the premises subject to dower, by a tortious act on the part of the heir, equivalent to a wrongful withholding or deforcement, and cannot be said to be in of right, as regards the widow from whom the land had been withheld. The reasons upon which the distinction between

the heir and his alienee rests, do not apply to the devisee, who is in of right equally with the heir, and doeth no wrong till demand be made. It is generally said that the plea is personal and peculiar to the heir, but this seems to be said in contradistinction to his alienee. It has already been shown that in pleading *tout temps prist*, the tenant need not aver himself heir. In a case in dower the tenant having pleaded *tout temps prist*, the demandant replied that the baron *died seised*, and that on a given day she required the tenant to endow her at D. and he refused, &c. The tenant said that on the same day he offered the femme to go with her to the land and to assign her dower, and she refused, *absque hoc* that he refused. The court held the issue good. 9 *Vin.* 291 *pl.* 17. The course of pleading applicable, as well as the reasons upon which this plea rests, equally apply to the devisee as to the heir; the distinction based upon the statute seems to be, whether the husband did or did not die seised. I am of opinion that when the husband dies seised, the plea is well pleaded under our statute by the devisee of the husband. The replication is therefore no answer to the plea, and being insufficient, judgment on the demurrer must be given for the defendant.

GREEN, C. J. concurred.

NEVIUS, J. This is an ordinary count in dower, to which the defendant has pleaded that from the death of John J. Hopper, the demandant's late husband, he hath been always ready, and is still ready to render to her her dower in the premises, and rendereth the same in court here. To this the demandant has replied, that the said defendant is not seised of said lands as heir at law of her said husband, who died seised of the same, and that after his death the said defendant became seised thereof, and yet holds the same by virtue of a devise in the last will of her said husband, and that after the death of her said husband, and before the suing out of the writ in this cause, to wit, on the 1st of April, 1846, she requested the said defendant to render her dower in said lands, yet he has neglected and refused, and still neglects and refuses, &c. Wherefore, &c.

The rejoinder is, that the demandant ought not by reason of anything in her replication alleged, to have her damages for the detention of her dower, because as before, he says that he has been always ready, and still is ready to render, &c.

To this rejoinder there is a general demurrer and joinder.

In support of this demurrer the demandant excepts to the plea, under the rule that on demurrer any antecedent defective plea may be excepted to.

The main objection to this plea is, that it does not on its face shew that the defendant has a right to plead *tout temps prist.* That where the husband died seised, neither the heir nor devisee is entitled to this plea. The only question in my mind is, whether this may be considered *res judicata.* In *Woodruff* v. *Brown,* 2 *Har.* 246, this question as to the right of the heir to such plea was raised and discussed at large, and two judges gave opinions affirming the right, and two gave opinions denying it. The whole court concurred in that case in overruling the plea, but that concurrence was on another point. Judge White gave no written opinion, but at the close of the Chief Justice's opinion, simply expressed his concurrence, but it does not appear whether it was a concurrence in all the views contained in that opinion, or merely in its final result. I incline to think the latter, and therefore consider it an open question. If it be so, I can do no more than reaffirm the opinion which I expressed in *Woodruff* v. *Brown,* and which upon a careful review of it, I am willing to do. I think the demurrer must be sustained, and this plea overruled with costs

Judgment on demurrer for defendant.

Reversed, 2 *Zab.* 715.